UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE LEA BEARDSLEY,

      Plaintiff,      Civil Action No.: 13-cv-12954
               Honorable Stephen J. Murphy, III
    v.           Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 11]

  Plaintiff Laurie Beardsley brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")[1] under the Social Security Act (the "Act"). Both parties have filed summary judgment motions that have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.  RECOMMENDATION**

  For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") residual functional capacity assessment ("RFC") is not supported by substantial evidence. This tainted the ALJ's conclusion at Step Four that Beardsley retained the capacity to perform her past relevant work, as well as the ALJ's finding that Beardsley was not disabled. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment

---

[1] It appears from the record that Beardsley may have also initially applied for supplemental security income ("SSI"). (Tr. 137-140). However, no further development of this claim appears in the record, and Beardsley did not raise the issue before either of the administrative review levels or before this Court.

[11] be DENIED, Beardsley's motion [10] be GRANTED IN PART to the extent she seeks remand of the case to the ALJ, and DENIED IN PART to the extent she seeks reversal and an immediate award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be REMANDED for further consideration consistent with this Report and Recommendation.

## II. REPORT

### A. Procedural History

On November 20, 2009, Beardsley filed an application for DIB, alleging disability as of September 26, 2008. (Tr. 135-36).[2] The claim was denied initially on February 8, 2010. (Tr. 80-83). Thereafter, Beardsley filed a timely request for an administrative hearing, which was held on December 22, 2011, before ALJ Craig Peterson. (Tr. 35-77). Beardsley, represented by attorney Daniel Pollard, testified, as did vocational expert ("VE") David Holwerda. (*Id.*). On March 7, 2012, the ALJ found Beardsley not disabled. (Tr. 19-34). On May 7, 2013, the Appeals Council denied review. (Tr. 1-5). Beardsley filed for judicial review of the final decision on July 8, 2013. [1].

### B. Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[2] On that same day, she also filed an application for supplemental security income, premised upon the same disability onset date. (Tr. 137-140). However, as noted above, for unknown reasons, there was no specific denial of this claim in the transcript, and she did not raise it before the ALJ, the Appeals Council or this Court. Therefore, the Court does not address it.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

Because Beardsley's motion only substantively takes issue with the ALJ's conclusions regarding her mental limitations, and only references in passing her alleged physical limitations,

3

the Court limits its recitation of the facts to Beardsley's alleged mental impairments.[3]

### 1. Beardsley's Testimony and Reports

Beardsley reported that the conditions preventing her from working are uncontrolled bipolar disorder and anxiety disorder, and that she became disabled in September 2008, which was the same time she was allegedly fired from her last job as a result of missing work due to her condition. (Tr. 167; 191-92). She also testified to having difficulty getting along with others and that she had been spoken to on several occasions by her employer for arguments she had with other employees. (Tr. 58-59).

After her firing, Beardsley admitted to getting unemployment insurance for a year and a half, although she did not believe that she could have engaged in full-time work. (Tr. 43; 62; 63-64). She testified to undergoing inpatient therapy in October 2008 for seven days, and being treated on an outpatient basis since that time. (Tr. 46; 169-70). Beardsley reported that her condition makes it difficult for her to get motivated, and she reported and testified to being unable to get out of bed on some days. (Tr. 62; 167). She also testified to daily panic attacks. (Tr. 67). She reported and testified to problems with her memory and concentration. (Tr. 44; 68; 190).

---

[3] Beardsley's motion goes into extensive analysis of the Sixth Circuit's decision in *Felisky v. Bowen*, which discusses how an ALJ should analyze subjective allegations of disabling pain. 35 F.3d 1027 (6th Cir. 1994). However, the only evidence she discusses relative to her alleged back pain is her own testimony that she has low back pain, and that she can only lift 5-10 pounds, stand for no more than an hour and sit for no more than 15 minutes. (Plf. Mot. 10-11). She does not take issue with the ALJ's decision at Step Two finding her back pain non-severe. Further, she does not discuss any objective medical evidence relating to her back pain. Nor does she describe how the ALJ's hypothetical was deficient as it relates to her back pain. Because any issues regarding Beardsley's alleged back pain were wholly undeveloped, they are waived. *See Martinez v. Comm'r of Soc. Sec.* No. 09-13700, 2011 U.S. Dist. LEXIS 34436 at *7 (E.D. Mich. Mar. 2, 2011) *adopted by* 2011 U.S. Dist. LEXIS 34421 (E.D. Mich. Mar. 30, 2011) (noting that "[a] court is under no obligation to scour the record for errors not identified by a claimant" and "arguments not raised and supported in more than a perfunctory manner may be deemed waived") (citations omitted).

Beardsley reported that she spends most days watching television and "sometimes" sleeping. (Tr. 185). She is able to do some chores, including cooking, laundry, vacuuming and sweeping. (Tr. 56; 187). She does not pay bills, and testified that she would have a difficult time making change if asked to. (Tr. 45; 188-89). She is capable of caring for her two grandchildren with the help of her boyfriend, with whom she has lived for more than three years. (Tr. 43; 57-58). She does not like engaging with other people or going out in public. (Tr. 43; 186). She testified that she will shop only if it is for a short period of time, and does not grocery shop. (Tr. 56-57; 188). She previously performed community service, which involved organizing clothes at Goodwill, but testified that, due to her anxiety, she would go into the back room when there were a lot of customers or children around. (Tr. 60-62; 189).

    2.    *Medical Evidence*

        a.    *Treating Sources*

From October 1 through October 8, 2008, Beardsley was treated as a voluntary inpatient at Pine Rest Christian Mental Health following a worsening of her bipolar disorder and a relapse in alcohol use. (Tr. 247). Beardsley reported "decompensating in outpatient level of care despite being on medications and in therapy." (*Id.*). She was diagnosed with bipolar I disorder, most recent episode mixed, severe with psychotic features, generalized anxiety disorder, panic disorder with agoraphobia, alcohol dependence and obsessive-compulsive disorder. (Tr. 244). Her medications were changed and she engaged in individual and group therapy during her stay. (*Id.*). Ultimately her symptoms improved and she was discharged at her request. (*Id.*). Her Global Assessment of Functioning ("GAF") score was 30 at admission and 57 at release. (Tr. 245).[4]

---

[4] "The GAF scale is a method of considering psychological, social, and occupational function on

5

Beardsley subsequently began a course of outpatient treatment with psychiatrist Dr. Michael Thebert at Pine Rest. At her first appointment on November 10, 2008, she was noted as "not doing well," presenting as "sad and downcast" with "poor sleep, worry, anxiety, [and] hopelessness." (Tr. 258). The doctor opined that she was "[n]ot able to work at this time due to her mood condition." (*Id.*). He modified her medications. (*Id.*). Over the course of the next eight months, Beardsley treated with Dr. Thebert on a weekly or bi-weekly basis, totaling 15 appointments. (Tr. 259-72). At each appointment, Beardsley was mostly noted to exhibit only a partial response to her treatment, and at all but two appointments, one or more of her medications or dosages was changed in response to her failure to improve. (*Id.*; 262; 270). Even on the occasions where improvement was noted, Dr. Thebert continued to opine that Beardsley could not sustain work. (Tr. 261 (finding Beardsley "improving" but "not able to work yet"); 272 (discussing transfer to county mental health due to Beardsley's "chronic illness and poor likelihood of being able to work in the future").

Beardsley was admitted to Community Mental Health on an outpatient basis in August 2009, and treated by social worker Kay Cole and psychiatrist Dr. Nan Alt. At the time of her admission on August 3, 2009, she was diagnosed by Cole with bipolar I disorder, most recent episode mixed severe without psychotic features and was issued a GAF score of 60. (Tr. 318). Beardsley reported at that time that she did not feel as though she could work and that she believed she was fired from her last two jobs due to her "unstable behaviors." (Tr. 314). A second admission report, this time authored by Dr. Alt on August 25, 2009, diagnosed Beardsley

---

a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).

with substance dependence, bipolar affective disorder and borderline personality disorder, and issued her a GAF score of "40%." (Tr. 334-35). Dr. Alt continued Beardsley's present medications and added another. (*Id.*). At appointments on September 8 and October 2, 2009, Beardsley appeared with mixed results from her treatment. (Tr. 330; 332). At her September appointment, she appeared stable, but informed Dr. Alt that certain medications were not working for her anymore. (Tr. 332). At her October appointment, she presented agitated and irritable, and her medications were again changed. (Tr. 330). It was on the date of her October appointment that Dr. Alt completed a medical source statement, concluding that Beardsley was totally disabled from any occupation, and had been since September 28, 2008, based on a diagnosis of mood disorder. (Tr. 351).

From October 2009 through April 2010, Beardsley continued to treat with both Dr. Alt and therapist Cole. Treatment notes from sessions with Cole from November through December 2009 reveal that Beardsley's condition was initially unstable and included reports of anxiety, anger, depression, frustration, stress and agitation. (Tr. 346-49). Treatment notes from Dr. Alt during this same period reveal that Beardsley was only partially responding to treatment and had periods both of stability and instability, exhibited by anxiety, tension and feelings of struggling. (Tr. 324-29). Beardsley's medication was changed at each of the three appointments during this time period. (*Id.*).

Beginning in January 2010, Beardsley's condition took a positive turn. (Tr. 322). At a medication review with Dr. Alt on January 12, 2010, Beardsley was reported as doing "extremely well," with good insight and judgment. (*Id.*). Her current treatment was maintained, one medication was removed, and she was not recommended to return for three months. (*Id.*). At her next appointment, in April 2010, Beardsley was noted to not be sleeping well, but her

condition was otherwise unremarkable and another follow-up was scheduled for three months. (Tr. 320).

Notes from therapy sessions with Cole from this period correlate to Dr. Alt's findings. During therapy sessions from January through March 2010, Cole noted that Beardsley was doing "much better" or "well," that her mood was stable, that she was exhibiting less depression, anxiety, that she had more energy and fewer mood swings. (Tr. 339-45). By the end of March, Cole recommended that Beardsley's case be transferred back to her primary care physician for management, a recommendation she was "fine with." (Tr. 339). At that time, Beardsley's only complaints were a lack of sleep, as well as other issues that were "situational" in nature, such as finances and legal issues unrelated to her mental condition. (*Id.*). Beardsley was ultimately discharged from Dr. Alt and Cole's care on April 20, 2010, with a GAF score of 70. (Tr. 305). Beardsley reported feeling satisfied with her care and that it "helped a great deal." (Tr. 304).

Intervening treatment records from Beardsley's primary care physician were not in the record. The only other treatment record produced was an April 14, 2011 record from Pine Rest, approximately one year after her previous discharge. (Tr. 302). The note, authored by another social worker, appears to show that Beardsley's condition had regressed, as she reported being an "emotional roller coaster" with headaches, irritability, uncontrollable crying and anger, panic attacks, night waking, confusion and poor comprehension and short term memory. (*Id.*). The treatment note further indicated that Beardsley's depression and anxiety were moderate to severe. (*Id.*). It also indicated that her hyper affect, problems with work, and cognitive performance were severe. (*Id.*). The evidence supplied in the report was gleaned from "patient self-report and therapist observation." (*Id.*). Beardsley was issued a GAF score of 50 and a medication change was recommended, as well as an evaluation for a "partial or full hospital stay

8

for stabilization." (*Id.*). However, there are no further treatment notes in the record.

### b.      *Consultative and Non-Examining Sources*

On February 1, 2010, Beardsley underwent a consultative mental exam for the State of Michigan. (Tr. 274-78). She reported to Dr. Dennis Mulder a history of three suicide attempts, the last being five years prior. (Tr. 274). She reported beginning mental health treatment in the 1990s, and being treated inpatient three times. (*Id.*). She reported taking medication, which helps her condition. (*Id.*). She reported a poor appetite and sleep that was "better with medication." She reported living in a house with her boyfriend of three-and-a-half years. (*Id.*).

Upon exam, Beardsley was in contact with reality, oriented and alert. Her speech was fluid and her though process relevant, logical and concrete. (Tr. 276). Her affect was appropriate and she denied hallucinations, blackouts, obsessions or persecutory ideations. (*Id.*). After a mental capacity exam, as well as a review of discharge summary from Beardsley's 2008 hospitalization, Dr. Mulder diagnosed Beardsley with bipolar disorder, most recent episode depressed, panic disorder without agoraphobia and a history of alcohol abuse in remission. He assessed her a GAF score of 55-60. (Tr. 277-78). He concluded that "[t]he potential for the patient becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis is currently guarded pending her compliance with psychiatric treatment." (Tr. 278). He found her unable to manage any benefits due to "impulsivity and a history of alcohol abuse." (*Id.*).

Dr. Bruce Douglass, reviewing the record and Dr. Mulder's findings, completed a psychiatric review technique form and a mental residual functional capacity assessment on February 5, 2010. (Tr. 280-97). He concluded that Beardsley had moderate restrictions in activities of daily living, moderate difficulties maintaining social functioning, and moderate

9

difficulties maintaining concentration, persistence and pace, as well as one or two episodes of decompensation. (Tr. 290). He further found that Beardsley's memory and understanding were intact globally, but that her concentration, persistence and pace, as well as her adaptation, would "vary," and that her social functioning was "restricted." (Tr. 296). He found that she would "have trouble keeping up in demanding work settings," and would "work best alone or in small groups." (*Id.*). He found Beardsley retained the "capacity to perform simple, routine, 2-step tasks on a sustained basis," noting that this determination was "not inconsistent with the vendor's rather inconclusive" medical source statement. (*Id.*).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ determined that Beardsley was not disabled. At Step One, he determined that Beardsley had not engaged in substantial gainful activity since her alleged onset date. (Tr. 24). At Step Two he identified the following severe impairments: "bipolar disorder, generalized anxiety disorder, panic disorder without agoraphobia, migraine headaches, irritable bowel syndrome, and alcohol abuse." (*Id.*). The ALJ, while noting Beardsley's allegations of back pain, refused to find that impairment severe. (*Id.*). However, he noted that he nevertheless accounted for that condition in his RFC finding. (*Id.*).

At Step Three the ALJ determined that none of Beardsley's impairments, either alone or in combination, met or medically equaled a listed impairment, specifically taking note of the requirements of Listings 5.06, 12.04, 12.06 and 12.09. (Tr. 25). He further found that Beardsley suffered only mild restrictions in her activities of daily living, mild difficulties in social functioning and moderate difficulties in maintaining concentration, persistence and pace, with no repeated episodes of decompensation.

Next, the ALJ assessed Beardsley's residual functional capacity ("RFC"), finding her capable of performing a restricted range of light work, and specifically that she was

> able to lift and/or carry up to 20 pounds occasionally, and lift and/or carry up to 10 pounds frequently. She is able to push and pull up to 10 pounds occasionally. The claimant is able to sit, with normal breaks, for a total of 6 hours in an 8-hour workday. The claimant is able to stand and walk, with normal breaks, for a total of 6 hours in an 8-hour workday. The claimant is able to climb stairs and ramps occasionally, but she is unable to climb ladders, ropes, or scaffolds. The claimant is restricted from performing repetitive bending and twisting at the waist level. The claimant is restricted from lifting from the floor to the waist level. She is limited to performing simple, routine, and repetitive tasks, involving simple work related decisions with few, if any, work place changes. The claimant is able to have occasional interaction with coworkers, supervision, and the public.

(Tr. 26). In discussing the evidence as it related to his RFC formation, the ALJ noted that he gave "great weight" to examining Dr. Mulder's consultative opinion and "moderate weight" to non-examining Dr. Douglass's consultative opinion. (Tr. 29). The ALJ gave "little weight" to treating Dr. Alt's opinion, finding that it was "inconsistent with the majority of the objective evidence and her own treatment notes, which show that the claimant demonstrated some improvement and/or stabilized symptoms with psychiatric treatment" as well as the fact that it offered an opinion on disability that was an issue reserved for the Commissioner. (*Id.*). In discussing the medical records, the ALJ does not mention the April 2011 treatment notes reflecting Beardsley's apparent significant regression, including that she be evaluated for "partial or full hospital stay for stabilization." (Tr. 28, 302). Instead, the ALJ's discussion of the treatment records ends with Beardsley's April 2010 discharge. (*Id.*). Nor did the ALJ mention any of Dr. Thebert's opinions that Beardsley was unable to return to work due to her condition.

At Step Four, based on the preceding RFC assessment, coupled with VE testimony, the ALJ concluded that Beardsley was capable of returning to her past relevant work as a product

11

assembler and general inspector, thus she was found not disabled. (Tr. 30-31).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the

Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

Beardsley appears to take issue with the ALJ's assessment of her credibility, his evaluation of the medical evidence, and his reliance on VE testimony that Beardsley claims was given in response to an inaccurate hypothetical question, based on the single heading in her brief. The Court notes that Beardsley's brief, filed by her counsel, Richard Doud, is similar to the one Doud filed in *Fielder v. Comm'r of Soc. Sec.*, No. 13-10325, 2014 WL 1207865, at *1, fn. 1 (E.D. Mich. Mar. 24, 2014), which Chief Judge Rosen found to be patently deficient; rather than synthesizing the facts and law into a coherent and properly-developed legal argument, the brief relies principally on "conclusory assertions and [suffers from the] absence of developed argument." *Id.* While the brief contains argument headings which suggest that the ALJ erred in his evaluation of the medical evidence, in assessing Beardsley's credibility, and in formulating the hypothetical presented to the VE, the actual arguments are, at best, skeletal in nature, and at worst, nonexistent. Beardsley's brief consists almost entirely of large swaths of block quotes

13

from cases, some of which are on point, and some of which lay out standards not even argued as applicable to this case (such as the subjective pain standard or the analysis required at Step 5 of the process, which was not reached in this case).

Nevertheless, Beardsley has done enough to invoke this Court's obligation to review the ALJ's decision to ensure that it is supported by substantial evidence in the record. In conducting that review, the Court concludes, for the reasons discussed below, that the ALJ's RFC is not supported by substantial evidence of record. Accordingly, neither are his findings that Beardsley could return to her past work and is not disabled adequately supported.

### *1.    The ALJ Failed to Properly Discuss the Medical Evidence of Record*

The Court first finds that the ALJ erred in failing to discuss Beardsley's April 2011 treatment note. (Tr. 302). While the Court recognizes that an ALJ need not discuss every record, he may not selectively discuss those records that support his conclusion while ignoring other significant pieces of evidence that detract from that conclusion. *See Feigenbaum v. Comm'r of SSA*, No. 12-2605, 2014 U.S. Dist. LEXIS 6322, *23 (N.D. Ohio Jan. 17, 2014). Here, although the ALJ properly noted Beardsley's improvement over a particular period of time, his decision ignores a subsequent treatment record that may reasonably tend to refute the conclusion of stabilization or improvement, showing instead a regression so severe that Beardsley was recommended to be evaluated for inpatient treatment. (Tr. 302).

The ALJ's failure to consider this treatment note is put into stark relief in light of the "great weight" he purported to afford Dr. Mulder's opinion. The ALJ accurately recited Dr. Mulder's ultimate finding that "claimant's prognosis for becoming gainfully employed in simple, unskilled work was *guarded pending her compliance with psychiatric treatment*." (Tr. 29; 278) (emphasis added). The ALJ erred by not discussing how, if at all, the subsequent note regarding

14

Beardsley's substantial regression (Tr. 302) impacted his interpretation of that "guarded" opinion.[5] As a result, the Court cannot adequately review the reasoning behind the ALJ's RFC assessment.

In addition, the ALJ erred in not discussing Dr. Thebert's opinions about Beardsley's ability to work. An ALJ must give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) *quoting* 20 C.F.R. § 404.1527(d)(2). If an ALJ declines to give a treating physician's opinion controlling weight, she must then determine how much weight to give the opinion, "by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) *citing Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2). The ALJ must give good reasons, supported by substantial evidence in the record, for the ultimate weight given to a treating source opinion. *Id.*, *citing Soc. Sec. Rul*. 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188 at *5. An ALJ is not required to give any special weight to a treating source's conclusion that a claimant is disabled, as this conclusion is reserved to the Commissioner alone, based on all the evidence of record. 20 C.F. R. § 404.1527(e)(1), (e)(3).

Here, although the ALJ stated that Dr. Thebert's treatment notes indicated that

---

[5] Again, while an ALJ certainly need not discuss each piece of medical evidence in his decision, the treatment note at issue here appears sufficiently germane to the ALJ's interpretation of Dr. Mulder's "guarded" opinion that it should have been discussed. It is also sufficiently consistent with numerous other pieces of record evidence that the Court cannot say the error was harmless. *See, supra* at 5-7.

Beardsley's "condition appeared to be worsening," (Tr. 28, 258-72), he failed to address (let alone give good reasons for discounting) Dr. Thebert's opinion that Beardsley was unable to return to work during the pendency of his treatment of her and would likely be unable to return in the future due to her "chronic illness." (Tr. 261; 272). It is of no consequence that this opinion was contained within his treatment notes rather than in an independent document. There is no requirement in the statute about the form a treating physician's opinion should take, only the content of what it should contain. *Huntington v. Colvin*, No. 13-759, 2014 U.S. Dist. LEXIS 11567, *29-30 (N.D. Ohio Jan. 30, 2014) *citing Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (finding treating physician's treatment notes constituted a "medical opinion" for purposes of §§ 404.1527(a)(2) and 416.927(a)(2) and, therefore, ALJ was required to "explicitly consider and explain the weight accorded" to the opinions contained in those notes). Because the ALJ erred in not considering this opinion, his decision is not supported by substantial evidence of record.

For all of the above reasons, the Court finds that the ALJ's decision that Beardsley is not disabled is not supported by substantial evidence of record and should be remanded for further consideration consistent with this Report and Recommendation. On remand, the ALJ should also consider the additional medical records supplied to the Appeals Council from 2012.[6] (Tr. 2).

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Beardsley's Motion for Summary Judgment **[10]** be **GRANTED to the extent she seeks remand and DENIED to the**

---

[6] The Court notes that these records are not contained in the present file despite the fact that it is customary that all records considered by either body are contained in the administrative record, regardless of whether those records could be considered by this Court.

16

**extent she seeks reversal and an immediate award of benefits**, the Commissioner's Motion **[11]** be **DENIED** and this case be **REMANDED for further consideration consistent with this Report and Recommendation.**.

Dated: May 31, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 31, 2014.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager